# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 17-20996-CIV-ALTONAGA/GOODMAN

ROY NEIL JOHNSTON, M.D.

     Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY,

     Defendant.

_____/

## <u>ORDER REGARDING DISCOVERY DISPUTE</u>

In their song "Don't Speak," the rock band No Doubt sang the following lament about being rejected: "Don't speak / I know what you're thinking / I don't need your reasons / Don't tell me cause it hurts."[1] But in the instant case, Plaintiff urges a completely **contrary** theme: he *wants* to know why he was rejected. In fact, the discovery dispute at issue arises from Plaintiff's desire to know *exactly* what Defendant was thinking when it turned down his disability claim, and the tussle also concerns his efforts to know *all* the reasons for Defendant's thumbs-down treatment of his claim.

Plaintiff, a physician named Roy Neil Johnston, filed a lawsuit against Aetna Life Insurance Company ("Aetna") under the Employee Retirement Income Security Act of

---

[1] NO DOUBT, *Don't Speak, on* TRAGIC KINGDOM (Trauma/Interscope 1995).

1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Dr. Johnston's lawsuit alleges that Aetna improperly terminated his short-term disability benefits and improperly denied his long-term disability claim. Aetna and Dr. Johnston were unable to resolve disputes concerning, at bottom, the scope of permissible discovery. The Undersigned held a hearing on those disputes on September 29, 2017. Shortly before the hearing, and after comprehensive briefing, United States District Judge Cecilia M. Altonaga entered an Order [ECF No. 43] granting Aetna's motion for determination of ERISA standard. Judge Altonaga's Order provides as follows: "Subject to the development of a more fulsome record, the arbitrary and capricious standard governs discovery in the case." [ECF No. 43, p. 1].

This ruling, however, did not eliminate the discovery dispute. At bottom, Aetna takes the position that Dr. Johnston is not permitted to obtain discovery beyond the actual, specific administrative record. Aetna says Plaintiff is limited to discovering the facts known to the Administrator at the time the decisions to terminate and deny coverage were made. Dr. Johnston, however, contends that he is able to obtain discovery beyond the technical administrative record because material and information considered by the decision-makers may not be evident in the actual administrative record and because Aetna is in an inherent structural conflict of interest (more on this below).

For all practical purposes, Dr. Johnston argues that this is not a typical disability lawsuit. He suggests that Aetna engaged in questionable and suspicious conduct, such as conducting surreptitious surveillance of him even though its medical review concluded that he was disabled. He also emphasizes that Aetna initially found him disabled because of its own independent neurologist's medical opinion. And he also points to what he deems unreasonable delay in rendering a final decision on his disability claim. For example, he alleges that Aetna "constantly request[ed] information it either already had or did not truly need for approval." [ECF No. 39, p. 2].

The parties acknowledge that the disability policy gives Aetna discretion to approve or deny disability claims. They also agree that Aetna has a dual role in evaluating claims and paying benefits, a scenario which generates a potential structural conflict of interest.

In response to the Undersigned's questions at the hearing, Aetna's counsel explained that (1) a claims representative made the initial decision to terminate and deny the short-term and long-term disability claims; (2) an appeals specialist made the final decision; (3) the administrative record which Aetna produced to Plaintiff's counsel includes the information which was before the claims examiner and the appeals specialist; and (4) the information before the appeals specialist is usually greater than the information before the initial claims examiner (because the disappointed disability claimant and/or his attorney often supplement the record when they pursue an appeal).

Aetna relies, at least in part, on *Blake v. Union Camp Int'l. Paper*, 622 F. App'x. 853 (11th Cir. 2015), to support its theory that discovery is limited to the administrative record. In *Blake*, the Court held that an arbitrary and capricious standard of review for denial of ERISA benefits means that "the district court should limit discovery to the evidence that was before the plan administrator when it denied the claim for benefits." *Id.* at 856 (internal citation omitted).The Court also noted that "the district court is limited to 'the facts known to the administrator at the time the decision was made.'" *Id.* (quoting *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008)).

To the extent that Aetna contends that *Blake* fully supports the notion that it does not need to provide any discovery beyond the actual administrative record, the Undersigned disagrees and finds *Blake* distinguishable and/or not controlling for several reasons.

First, *Blake* is an *unpublished* Eleventh Circuit opinion. Eleventh Circuit Rule 36-2 provides that "unpublished opinions are **not considered binding precedent,** but they may be cited as persuasive authority." 11th Cir. R. 36-2 (emphasis added). Similarly, Eleventh Circuit Internal Operating Procedure 6 provides, in pertinent part: "Opinions that the panel believes to have no precedential value are not published. Although unpublished opinions may be cited as persuasive authority, they are not considered binding precedent." 11th Cir. R. 36, I.O.P. 6. Likewise, Internal Operating Procedure 7

also notes that "[t]he court generally does not cite to its 'unpublished' opinions because they are not binding precedent." 11th Cir. R. 36, I.O.P. 7.

Second, the legal issue before the appellate court was whether the district court abused its discretion in denying the plaintiff's motion to compel discovery. That motion was filed after the close of discovery. The appellate court held that it was "within the court's 'range of choice' to conclude that the additional discovery requested would not change the evidence before the court." *Blake*, 622 F. App'x. at 856. Thus, the appellate ruling was not that the district court was barred from directing the defendant to provide additional discovery had it been timely requested. Instead, it was a far-more-limited ruling: the district court did not abuse its discretion in denying the tardy request for more discovery. The ruling was <u>not</u> that the trial court was prohibited from also properly exercising its discretion and permitting some additional discovery if it had been timely requested.

Third, it does not expressly say that discovery is limited to the administrative record. Rather, it says that discovery is the "evidence that was **before the plan administrator** when it denied the claim for benefits." *Blake*, 622 F. App'x. at 854 (emphasis supplied) (internal citation omitted). Thus, *Blake* does not foreclose discovery of administrator's consideration of other evidence that is not in the administrative record.

Fourth, *Blake* noted that the administrator certified that "the district court had before it all the facts known to the administrator when the administrator made its decision" and held that it was within the court's "'range of choice' to conclude that additional discovery" was unnecessary. *Blake*, 622 F. App'x. at 856 (internal citation omitted). Aetna has not advised the Undersigned that it made a similar certification here. Nevertheless, even if it had, it still would be within the Court's "range of choice" to allow discovery beyond the certified administrative record. *Id.* Indeed, the appellate court held that the trial court's denial of discovery was "not an abuse of discretion." *Id.* It did not say that the trial court could not have properly exercised its discretion and *permitted* some additional discovery.

Fifth, Dr. Johnston has called the Court's attention to some post-*Blake* decisions in which some additional discovery (i.e., beyond the administrative record) was permitted.

Sixth, Dr. Johnston has pointed to a few arguably provocative facts (flagged above) which might support a theory that Aetna's administrator acted in an arbitrary and capricious way when denying the claims.

Aetna also relies on *Blankenship v. Metropolitan Life Insurance Company*, 644 F.3d 1350, 1354 (11th Cir. 2011), where the Court held that "review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." (internal citation omitted). Noting

that a structural conflict of interest is "an unremarkable fact in today's marketplace," the *Blankenship* Court also held that the carrier's structural conflict of interest is merely "a factor" in the analysis, which still "centers on assessing whether a reasonable basis existed for the administrator's benefits decision." *Id.* at 1355 (internal citations omitted).

Plaintiff cites several post-*Blankenship* cases to justify his request for discovery beyond the simple production of the administrative record. Many of these cases rely on the so-called *Cerrito* factors, which arise from *Cerrito v. Liberty Life Assurance Company*, 209 F.R.D. 663 (M.D. Fla. 2002). In that case, the plaintiff filed an ERISA action for long-term disability benefits under an employee benefit plan. Liberty moved for a protective order, asserting that any discovery should be limited to the four corners of the administrative record. Noting that Liberty invoked the "arbitrary and capricious" standard of review, the *Cerrito* Court pointed out that

> courts have generally permitted discovery, even in instances in which an "arbitrary and capricious" standard applies, in order to assist the court in evaluating 1) the exact nature of the information considered by the fiduciary in making the decision; 2) whether the fiduciary was competent to evaluate the information in the administrative record; 3) how the fiduciary reached its decision; 4) whether, given the nature of the information in the record, it was incumbent upon the fiduciary to seek outside technical assistance in reaching a "fair and full review" of the claim; and 5) to determine whether a conflict of interest existed.

*Cerrito*, 209 F.R.D. at 664 (internal citations omitted).

The *Cerrito* Court permitted the discovery because the plaintiff's discovery demands were limited to the five topics listed above. Those five factors are called the *Cerrito* factors.

Although *Cerrito* is a Middle District of Florida case, several judges in the Southern District of Florida have followed its teachings, even in cases decided after *Blankenship*.[2]

In *Tarigo*, Aetna filed an emergency motion for a protective order to limit discovery in an ERISA disability case. *Tarigo*, 2012 U.S. Dist. LEXIS 183800. The plaintiff had noticed the depositions of two Aetna employees and the deposition of the independent physician who reviewed the plaintiff's medical records at Aetna's request. *Id.* at *3. In addition, he had issued a notice of intent to issue subpoenas for documents to the independent vendor which arranged for the physician's medical review and the independent vendor which arranged an independent medical examination by a different physician. *Id.* The *Tarigo* Court acknowledged *Blankenship* and the rule that review of an ERISA benefits denial under the arbitrary and capricious standard is "limited to consideration of the material available to the administrator at the time it made its decision." *Id.* (internal quotation omitted).

---

[2]  *See e.g., Ashmore v. NFL Player Disability & Neurocognitive Benefit Plan,* No. 16-81710-CIV, 2017 WL 4342197 (S.D. Fla. Sept. 27, 2017); *Agrifolio v. Aetna Life Ins. Co.,* Case No: 16-cv-20246-PAS (S.D. Fla. 2016); *Bloom v. Hartford Life & Accident Ins. Co.,* 917 F. Supp. 2d 1269 (S.D. Fla. 2013); *Tarigo v. Aetna Life Ins. Co.,* No. 12-21664, 2012 U.S. Dist. LEXIS 183800 (S.D. Fla. 2012).

In *Tarigo*, Aetna argued that depositions of non-Aetna witnesses "would shed no light on Aetna's internal decision-making process" because they were not involved in it. *Id.* at *7. In addition, Aetna also argued that reports generated by the non-Aetna deponents were part of the administrative record anyway and "any further information supplied through their depositions would either be duplicative or irrelevant." *Id.* Tarigo, on the other hand, argued that "all facts known to the plan administrator are not necessarily to be found in the administrative record and that evidence of whether a defendant's conflict of interest impacted its decision-making is never found in the administrative record." *Id.*

In *Tarigo,* United States Magistrate Judge William C. Turnoff concluded that restricting discovery to the material available to the plan administrator at the time it made its decision in ERISA benefits cases where entities both fund ERISA plans and conduct benefit determinations "would do nothing to expose a conflict of interest, particularly in light of the probability that certain facts which may have influenced the administrator's decision may very well lie outside the administrative record." *Id.* at *7. Therefore, Judge Turnoff permitted discovery restricted to the *Cerrito* factors.

Dr. Johnston's counsel echoed Judge Turnoff's sentiments at the discovery hearing. At bottom, Plaintiff does not trust Aetna to include all relevant information in the administrative record. Plaintiff's counsel argued that defendants like Aetna would be tempted to produce an unfairly narrow administrative record as part of a strategy

designed to hide from scrutiny all the reasons underlying the administrator's decision to terminate or deny disability benefits. Plaintiff was, for all practical purposes, invoking the following lyrics from the Neil Young song "Revolution Blues": "I hope you get the connection, 'cause I can't take the rejection / I won't deceive you, I **just don't believe you**."[3] (emphasis added).

Phrased in a more-colorful way, Plaintiff implicitly suggests that Aetna's position -- that it (and only it) decides what goes into the actual administrative record it compiles and therefore determines the scope of discovery obtainable by Plaintiff -- is akin to having the fox guard the henhouse.

In *Bloom*, United States District Judge Kenneth L. Ryskamp explained that the rule against considering extra-record materials to determine a claimant's eligibility for benefits would not preclude the admissibility of evidence "to support a claimant's collateral assertion of an administrator's misconduct or bias." 917 F. Supp. 2d. at 1277. Therefore, the Court permitted extra-record materials concerning Bloom's accusations that Hartford deviated from its own claims practices and therefore failed to provide a full and fair review. However, the *Bloom* Court would not permit extra-record evidence offered "to substantively impact her eligibility for benefits, i.e., evidence introduced to show she was or was not disabled." *Id.*

---

[3]  NEIL YOUNG, *Revolution Blues, on* ON THE BEACH (Reprise 1974).

Based on this approach, Judge Ryskamp allowed Bloom to introduce the following extra-record documents: (1) a page from Hartford's claim manual concerning its use of a "perfection statement[;]" (2) Hartford's internal training guideline concerning seizure disorders; (3) the deposition transcript of a Hartford representative; and (4) excerpts from Hartford's claims manual regarding explicit recognition of the consideration of Bloom's social security disability award in her termination letter. *Id.* at 1279.

Nevertheless, the *Bloom* Court, citing *Blankenship*, emphasized that the "controlling rule still remains: the Court reviews the administrator's decision to terminate the benefits in light of the evidence before it at the time the decision was made." *Id.* (internal citation omitted). Judge Ryskamp evaluated Aetna's decision under both a *de novo* and arbitrary and capricious standard. He found that Hartford's decision to deny benefits was not arbitrary and capricious and that Hartford provided a full and fair review of his claim, concluding that there was a reasonable basis, even if disputed, to support Hartford's benefits-denial decision. Thus, even with the review of additional evidence which Hartford urged not be considered, the *Bloom* Court granted Hartford's summary judgment motion and denied Bloom's summary judgment motion. *Id.* at 1288.

In *Ashmore*, United States Magistrate Judge William Matthewman rejected the defendant's position that no additional discovery be permitted because everything is already contained in the administrative record it compiled -- and also rejected the

plaintiff's position "that virtually everything contained in Defendant's file, and every person in any way involved in the disability denial process, are discoverable." *Id.* at *2. Instead, Judge Matthewman permitted some additional relevant and proportional discovery. At bottom, his discretionary decision was based on the notion that discovery beyond the defense-prepared "administrative record" is sometimes permissible when "facts known to the administrator could include information not within the claims file, and the discovery sought by Plaintiff is relevant to this inquiry."[4]

In *Agrifolio* [ECF No. 42], Defendant Aetna asked the District Court to reconsider its order requiring it to produce its disability claims manual in its entirety. Case No: 16-cv-20246-PAS (S.D. Fla. 2016). Noting that the case "requires an analysis of Aetna's structural conflict of interest and possible procedural bias," United States District Judge Patricia A. Seitz denied Aetna's reconsideration motion -- and also entered a fee award against it for its "repeated attempts to stonewall any discovery related to the claims manual." *Id.* at [ECF No. 58, p. 3]. The *Agrifolio* Court noted that Aetna, which is also the defendant in the instant case, engaged in a "continual fight" against production which "served no purpose other than delay." *Id.* [Note: the law firm which represented Aetna in *Agrifolio* is also the law firm representing Aetna in the instant case].

Moreover, the underlying *Agrifolio* decision (submitted as authority in this case at ECF No. 51-1) rejected Aetna's argument that the plaintiff was not entitled to any

---

[4]     Magistrate Judge Matthewman quoted *Rosser-Monahan v. Avon Products, Inc.*, 227 F.R.D. 695, 699 (M.D. Fla. 2004).

discovery beyond the administrative record when the arbitrary and capricious standard of review applies. *Id.* at [ECF No. 40]. Aetna cited both *Blankenship* and *Blake*, and the *Agrifolio* Court noted that the defendant relied "heavily" on them. *Id.* at p. 7. Judge Seitz then concluded that the plaintiff was entitled to discovery about Aetna's "structural conflict of interest and whether the conflict effected the decision making process or resulted in procedural irregularities." *Id.* at p. 8. However, to present a complete understanding of *Agrifolio*, the Undersigned also notes that Judge Seitz expressly reminded the plaintiff to "keep in mind the requirements of Federal Rules of Civil Procedure 1 and 26(b)(1), which require that discovery be proportional to the needs of the case and that the parties work to secure the just speedy and inexpensive resolution of this matter," when "formulating his discovery requests." *Id.* at p. 8, n. 6.

Aetna did not list *Agrifolio* in its notice of authorities or supplemental notice of authorities. [ECF Nos. 45, 48]. Defense counsel who appeared for Aetna at the hearing in the instant case is also the attorney who appeared as one of the two primary attorneys for Aetna on its briefing in the *Agrifolio* case. As noted above, Judge Seitz ordered Aetna to produce its disability claims manual and also entered an award of reasonable attorney's fees against Aetna in connection with the plaintiff's successful motion to compel the production of the manual and Aetna's unsuccessful motion for reconsideration of the earlier discovery ruling.

Aetna did, however, list other non-binding cases in its notices of authority. None of those cases are from the Southern District of Florida. None of them are from any district court in Florida. And, indeed, none of them are from any district court in the entire Eleventh Circuit. The Undersigned is not bound by any of them, of course, and, having reviewed the cases, I prefer to rely on the district court cases from our own district or other district courts in Florida.[5]

In addition to the cases listed above, Plaintiff also relies on *Gerardi v. Aetna Life Insurance Company*, No. 16-14333, 2017 WL 1555972 (S.D. Fla. Mar. 3, 2017), another case in which the same counsel representing Aetna in the instant case also represented Aetna in a challenge to a disability claim.[6] In that case, the Plaintiff sought discovery about the degree to which Aetna's decision-making was "improperly influenced and directed." *Id.*

---

[5]     For example, in *Kaviani v. Reliance Standard Life Insurance Company*, No. 6:16-cv-2061 (M.D. Fla. July 17, 2017), submitted in the instant case at ECF No. 46-13, United States Magistrate Judge Daniel C. Irick granted in part the plaintiff's motion to compel, noting that the scope of discovery in an ERISA case, in which the Court considers whether the administrator's denial decision was arbitrary and capricious, is generally permitted to the extent they concern the five *Cerrito* factors. Therefore, the defendant there was required to provide "all responsive information, **regardless of whether it is in or outside of the administrative record."**). [ECF No. 46-13, at p. 10 (emphasis added)].

[6]     The Undersigned is not suggesting, even implicitly, that defense counsel engaged in improper conduct here merely because he was counsel in *Gerardi* and *Agrifolio*. Instead, I am simply noting the reality that counsel is extremely familiar with these issues because he has litigated them on Aetna's behalf before other judges in this district (and received rulings which rejected the "no-discovery-at-all-beyond-the-administrative-record" defense position). Those cases are not binding and the Undersigned is not taking the position that counsel was duty-bound to reveal them on his own here.

at *2. Noting that the arbitrary and capricious standard of review is "deferential" but "does not immunize the denial from all scrutiny," United States Magistrate Judge Frank Lynch acknowledged that the Court "does not consider any <u>new</u> medical or non-medical evidence relevant to the state of the Plaintiff's health or his functional ability." *Id.* (emphasis in original). But Judge Lynch also highlighted several additional points which the Undersigned deems helpful:

1.      "[T]he scope of the review is not limited to the Administrative Record, per se. It is limited to what evidence the Plan Administrator had before it at the time of decision-making and through the time of its final decision." *Id.*

2.      "This distinction is a subtle one" because "[i]t does not automatically follow that the proffered Administrative Record contains all of the evidence that the Plan Administrator had before it." *Id.*

3.      There is "an exception to the rule that limits the scope of judicial review to the evidence available to the plan administrator through the time of its final decision." *Id.* at *3. Specifically, this exception means that "a reviewing court may include in its consideration additional evidence to the extent it relates to conflict of interest and bias."[7] *Id.*

---

[7]      The *Gerardi* Court, citing *Till v. Lincoln Life Insurance Company*, 678 F. App'x. 805 (11th Cir. 2017), emphasized that the Eleventh Circuit expressly includes conflict of interest or bias as a factor for consideration in its six-step standard of review.

4.　Because "it does not automatically follow that the administrative record that a defendant proffers into the record always will contain all evidence relevant to conflict of interest or bias," the case law "permits at least some discovery into this 'collateral' subject even though it adds new evidence to the record before the Court." *Id.* (internal citation omitted).

5.　Although an ERISA plaintiff may have some latitude in exploring such "collateral" issues, these requests "must be narrowly tailored to that end." *Id.* at *4.

In a memorandum [ECF No. 67, p. 1] addressing Dr. Johnston's supplemental authority (ECF No. 60, i.e., the *Gerardi* case), Aetna takes issue with *Gerardi* and argues that its statement that judicial review in a discretionary ERISA benefits case is "not limited to the Administrative Record" is "inconsistent" with *Blankenship* and *Blake.* The Court appreciates that those cases evaluated benefits denials based on the administrative record. But those cases implicitly assumed that the administrative record was coextensive with the material available to the administrator.　In some cases, that may well be entirely correct.　But it may be incorrect in others. At a minimum, the administrative record would likely not reveal oral communications relied upon by the administrator, unless a contemporaneous and comprehensive memorandum of the communication was prepared and included in the administrative record.

Moreover, other district courts have permitted additional discovery even after *Blankenship* and *Blake* were decided (in 2011 and 2015, respectively). The other cases

cited by Aetna were decided before *Blake.*[8] And Plaintiff has flagged some unusual factors which make it risky to simply conclusively assume that any potential structural conflict of interest would necessarily be reflected in the administrative record. In addition, the Undersigned notes that Aetna has contradicted itself in at least one way. Aetna vigorously argues that the case should be decided solely on the administrative record and that no discovery beyond the administrative record should be permitted. But it also conceded, at the hearing, that Dr. Johnston would be permitted to obtain discovery about the qualifications of the physician who reviewed the claim for Aetna -- even though that information is not in the administrative record.

In any event, there is no doubt that magistrate judges are afforded broad discretion in resolving nondispositive discovery disputes. *Tracy P. v. Sarasota Cty.*, No. 8:05CV927T27EAJ, 2007 WL 1364381, at *2 (M.D. Fla. May 9, 2007).

A district judge may modify or set aside a magistrate judge's discovery rulings which are clearly erroneous or contrary to law, a standard which is "extremely deferential." *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co., Inc.*, No. 12-CV-81397, 2015 WL 11921411, at *1 (S.D. Fla. July 6, 2015) (internal quotation omitted).

"A finding is clearly erroneous only if 'the reviewing court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523

---

[8]     *Harvey v. Standard Ins. Co.*, 503 F. App'x. 845 (11th Cir. 2013); *Vivas v. Hartford Life & Acc. Ins. Co.*, 49 F. Supp. 3d 1124 (S.D. Fla. 2014).

(11th Cir. 1997)). Or, as the Seventh Circuit has put it: "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). "The mere fact that a reviewing court might have decided the issue differently is not sufficient to overturn a decision when there are two permissible views of the issue." *Pendlebury v. Starbucks Coffee Co.*, Case No. 04-80521, 2007 WL 4592267, at *2-3 (S.D. Fla. Dec. 28, 2007) (internal citation omitted). "[T]he 'clear error' exception must be rarely invoked." *Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015).

Given this broad discretion, the Undersigned makes the following observations (in general) and rulings about discovery (in this particular case) -- and notes that these rulings concern only discovery, and not **admissibility at trial** or for use in other settings, such as advancing or defending a summary judgment motion. To be sure, another magistrate judge could reach a different decision about the permissible scope of discovery here in this ERISA case, but the mere fact that a reviewing court may decide the issue "differently is not sufficient to overturn a decision when there are two permissible views of the issue." *Sun Capital Partners*, 2015 WL 11921411, at *1 (denying objections to magistrate judge's discovery order) (internal quotation omitted). *See generally Am. Family Mut. Ins. Co. v. Roth,* No. 05C 3839, 2010 WL 3397362, at *2 (N.D. Ill. Aug. 25, 2010) ("indeed, on virtually identical facts, two decision makers can arrive at

opposite conclusions, both of which constitute appropriate exercises of discretion")
(internal citations omitted).

First, the controlling principle is the one articulated in *Blankenship*: review of the
plan administrator's denial of benefits is generally limited to consideration of the
material available to the administrator at the time it made its decision.

Second, the material "made available" to the administrator may not in all cases
be limited to the administrative record, which, after all, is prepared by the plan
administrator.

Third, material "made available" to the person deciding whether to award
benefits may well be *oral*. Thus, a plaintiff would be permitted to ask the claims
examiner if she was provided with any oral information concerning the claim, and, if
so, to identify the information and explain what significance, if any, it had on the claims
decision (or appeals decision).

Fourth, when a defendant is in a structural conflict scenario, both funding the
plan and evaluating benefits claims, this conflict is a relevant factor. Therefore, some
discovery about this conflict or potential conflict is permitted.

Fifth, to consider the structural conflict, a court may need to permit a plaintiff to
obtain discovery beyond the written administrative record compiled by the
administrator. Basically, this means that discovery about the apparent structural conflict
and its possible impact on the decision-making process, including procedural

irregularities, should be permitted. Therefore, as explained in *Agrifolio*, "the claims manual is discoverable because it may be relevant in demonstrating procedural misconduct by Defendant." [ECF No. 58, p. 3].

Sixth, the mere fact that a structural conflict might exist does not give a plaintiff challenging a benefits denial *carte blanche* rights to probe into every aspect of the decision.

Seventh, any plaintiff-generated discovery in an ERISA benefits challenge lawsuit must comply with the proportionality requirement of Rule 26(b)(1).

Eighth, because Aetna advised that applicable regulations require the plan administrator which uses a physician to assist in the claim evaluation to be one with appropriate credentials, a disappointed benefits claimant should ordinarily be entitled to obtain discovery about the credentials of physicians who participated in the analysis. But this discovery is limited and could be accomplished through the simple and basic production of a physician's resume or C.V. or similar summary. Aetna shall produce this information by October 20, 2017.

Ninth, if an administrator has a structural conflict, then a plaintiff would be entitled to obtain discovery about whether anyone involved in the claims process could receive a bonus, commission, promotion, pay grade reassessment, or other compensation based on his or her track record for approving or rejecting ERISA claims. This permissible discovery, however, is narrow, and would, for example, permit basic

and straightforward interrogatories. It would not ordinarily entitle a plaintiff to discover information about the actual compensation paid to a specific claims examiner or appellate specialist, nor would it routinely permit discovery of an employee's personnel file or their employment contracts. It would permit a simple discovery request about *whether* the administrator kept statistics on the numbers or percentages of claims approved or rejected by examiners or reviewing physicians. Therefore, Aetna is required to produce responsive discovery about this general issue by October 20, 2017.

Tenth, although an administrator's failure to comply with an applicable claims manual procedure might not be *dispositive* of the issue of whether the denial decision was arbitrary and capricious, a plaintiff should in most cases be entitled to the relevant sections of the claims manual. This would enable a plaintiff to determine whether an administrator complied with applicable rules and internal guidelines, which could be a factor to consider in the structural conflict assessment. If, on the other hand, a plaintiff could not obtain copies of relevant sections of a procedures manual, then the plaintiff would likely never know whether the person who denied the claim complied with an applicable procedure (because it would not be in "the administrative record"). Therefore, Aetna shall produce the responsive portions of its claims and procedures manuals by October 20, 2017.

Eleventh, because the issue is based on what information was available to the administrator **at the time the decision was made,** post-record discovery about later events would ordinarily *not* be permitted.

Twelfth, a plaintiff would be entitled to obtain in discovery a copy of a surveillance report and might be permitted to discover the reason why the surveillance was requested (if the reason was contrary to the applicable procedures manual section). If not already produced, Aetna, shall by October 20, 2017, produce responsive discovery reflecting its reasons for requesting surveillance of Dr. Johnston.

Framed by these principles, the Undersigned concludes that the discovery outlined above is permissible even though it might not actually be in the technical administrative record.[9]

In an effort to avoid future discovery disputes, the Undersigned notes that Plaintiff would also be entitled to explore these issues at depositions of Aetna's witnesses, including Rule 30(b)(6) witnesses, regardless of whether the answer is expressly evident in the administrative record. On the other hand, Johnston would not be permitted to ask deposition questions deemed off-limits in this discovery order.

---

[9]    At the discovery hearing, Plaintiff's counsel advised that the requests for admissions are now "off the table," so the Undersigned will not address those discovery requests.

<u>The Fiduciary Exception</u>

Finally, the parties disagree about the scope of the so-called fiduciary exception to the attorney-client privilege. The issue is particularly thorny because Plaintiff is seeking communications between Aetna and its counsel made both before and after the lawsuit was filed. Plaintiff highlights the fact that Aetna did not conclusively decide his disability claims until after the lawsuit was filed, which means that Aetna was still administratively evaluating the benefits claim. In addition, Plaintiff seeks not only communications with Aetna's in-house counsel, but he also seeks discovery of communications with counsel retained to defend Aetna in this lawsuit, up until the time Aetna conclusively denied his coverage claims. Given the sensitivity and importance of this issue, the fiduciary exception merits specific and additional discussion.

ERISA's purpose is to protect "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). As a plan administrator and fiduciary with discretionary authority, Aetna was bestowed with the power to interpret and apply the terms of the long-term disability insurance policy. Because of this power, however, Aetna is held to a "higher-than-marketplace" standard. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008). Indeed, Aetna is statutorily required to discharge its duties with "care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1)(B). As a fiduciary, Aetna must act "solely in the interest of the participants and beneficiaries[.]" § 1104(a)(1).

In the ERISA context, the fiduciary exception is based on the assumption that the trustee or administrator cannot assert the privilege against a beneficiary of the plan because the trustee is presumed to be acting for the benefit of the beneficiary. Therefore, when seeking legal advice, the trustee or administrator does not do so on its own behalf, but on behalf of the beneficiary (i.e., the claimant). Under the fiduciary exception to the attorney-client privilege, an ERISA fiduciary may be required to produce communications with counsel that are "intended to assist in the administration of the plan." *Moore v. Met. Life Ins. Co.*, 799 F. Supp. 2d 1290, 1293 (M.D. Ala. 2011) (internal citation omitted). Aetna agrees that most of the courts in the Eleventh Circuit, which has not expressly addressed the scope of the fiduciary exception in ERISA cases, have "recognized the exception's existence under federal common law." [ECF No. 65, p. 2, n. 2].

According to Aetna, *United States v. Mett*, 178 F.3d 1058 (9th Cir. 1999) is "the leading federal case with respect to the fiduciary exception to the attorney-client privilege." [ECF No. 65, p. 1, n. 1]. Aetna notes that several of the cases cited by Plaintiff also cite *Mett*. Although a criminal case, *Mett* has in fact been cited by courts grappling with the fiduciary exception in civil cases. *Mett* reversed the convictions of two defendants who appealed convictions arising out of certain improper transactions involving ERISA pension benefit plans they administered because the trial court erroneously admitted highly prejudicial evidence in violation of the attorney-client

privilege. 178 F.3d at 1068-69. At trial, the government introduced testimony from the defendants' former attorney and also admitted two memoranda he authored. *Id.* at 1061. The defendants argued that the evidence should have been excluded under the attorney-client privilege, while the government invoked the fiduciary exception to the privilege. *Id.* The memoranda concerned the potential civil and criminal exposure the defendants might face in light of their withdrawals from the ERISA pension plan. *Id.* at 1062.

As explained in *Mett*, the fiduciary exception had its genesis in English trust law but has since been applied to numerous fiduciary relationships, including the ERISA context. Significantly, *Mett* explained that the case law creates two ends of a spectrum for the fiduciary exception:

> On the one hand, where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity, the trustee cannot invoke the attorney-client privilege against the plan beneficiaries. On the other hand, where a plan fiduciary retains counsel in order to defend herself against the plan beneficiaries (or the government acting in their stead), the attorney-client privilege remains intact.

*Id.* at 1064.

Both Aetna and Plaintiff rely on *Moore*. In *Moore*, the court was resolving the plaintiff's motion to compel four documents identified on defendant Met Life's privilege log. 799 F. Supp. 2d at 1292. The plaintiff, Moore, relied on the fiduciary exception. *Id.* One memo was written well before the lawsuit was filed, but three were

authored after the lawsuit commenced. *Id.* at 1296-97. Although the *Moore* Court did in fact quote some language which, on its face, seems to help a defendant ERISA plan administrator, the actual **result seems** to favor the plaintiff.

Specifically, the *Moore* Court quoted *Mett* for the approach that "where an ERISA trustee seeks an attorney's advice on a matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity," the exception applies. *Id.* at 1293 (quoting *Solis v. The Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 227 (4th Cir. 2011) (quoting *Mett*, 178 F.3d at 1064). But, "where a plan fiduciary retains counsel in order to defend herself against the plan beneficiary," the exception does not apply." 799 F. Supp. 2d at 1294 (quoting *Mett*, 178 F.3d at 1064).

Relying on this language, Aetna urges this Court to reject the fiduciary exception for post-lawsuit communications. However, Aetna did not adequately focus on the fact that the *Moore* Court actually required the production of the post-lawsuit materials to which an attorney-client privilege claim was lodged. The *Moore* Court explained that it would be "tempting" to "take the easy path devoid of analysis" and "use the filing date as a date on which the interests of Met Life and Moore diverged such that the fiduciary exception does not apply." 799 F. Supp. 2d at 1297. However, the *Moore* Court found the easy path to be "unacceptable" and **granted** the motion to compel as to those additional, post-lawsuit documents because Met Life was still administratively considering the plaintiff's claim for benefits. *Id.* The *Moore* Court held that a "plan administrator

engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents." *Id.* (quoting *Varity Corp. v. Howe,* 516 U.S. 489, 511 (1996)).

On the other hand, *Moore* did not specify whether the attorney-client documents prepared after the lawsuit was filed involved in-house counsel or outside counsel retained to defend the lawsuit. The difference between a communication from (or to) an in-house attorney and one involving an attorney purposefully and specifically retained to defend a lawsuit is legally significant. *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631 (5th Cir. 1992) (failing to disturb magistrate judge's ruling permitting plaintiffs to take deposition of an in-house attorney about events before the lawsuit was filed and decision finding that the fiduciary exception was not applicable to counsel retained to defend the lawsuit in question).

The Undersigned concludes that the fiduciary exception permits discovery of attorney-client communications between Aetna and its in-house counsel before the lawsuit was filed and **might** permit discovery of post-lawsuit communications before the final benefits decision was made. The Undersigned will need to review the communications sent after the lawsuit was filed but before the final benefits decision was made to determine the applicability of the fiduciary exception. Aetna will therefore need to submit those documents (i.e., communications with in-house counsel) under seal for the Undersigned's *in camera* review.  Aetna shall make this under-seal filing by

October 20, 2017, and shall also, by the same date, deliver a courtesy copy of the communications to chambers.

As a general matter, the fiduciary exception may, in some circumstances, be inapplicable to discovery of post-lawsuit attorney-client communications with outside counsel. Courts engage in a fact-specific inquiry, "examining both the content and context of the specific communication, to determine whether a particular attorney-client communication concerns a matter of plan administration, as opposed to legal advice for the fiduciary's own benefit. Frequently, the key question is whether the communication was made before or after the final decision to deny benefits." *Harvey v. Standard Ins. Co.,* 275 F.R.D. 629, 633 (N.D. Ala. 2011) (internal quotation and citations omitted). Therefore, under this approach, there "should be little need for administrators to consult counsel regarding a specific benefits determination" after "the challenged benefits determination occurs." *Id.* (internal quotation omitted).

If Aetna asserted only the attorney-client privilege to its communications with outside counsel after the lawsuit was filed, then the fiduciary exception *might* permit discovery of post-lawsuit, pre-decision (in the claim for benefits) communications between Aetna and its outside litigation counsel (who were retained only after the lawsuit was filed). But Aetna *also* asserted the work-product doctrine, which is separate and distinct from the attorney-client privilege and provides, "in some ways, broader protection." *Murphy v. Gorman*, 271 F.R.D. 296, 311 (D.N.M. 2010) (internal citations

omitted). Therefore, there is no need for the Undersigned to determine whether the post-lawsuit communications between Aetna and its outside law firm are discoverable under the fiduciary exception to the attorney-client privilege because the work product doctrine precludes discovery of post-lawsuit communications between Aetna and its outside counsel in any event. Thus, the fiduciary exception is entirely academic.

In fact, Southern District of Florida Local Rule 26.1(e)(2)(C) presumes that all post-lawsuit communications are subject to both the attorney-client privilege and the work product doctrine because it provides that communications between a party and its counsel after commencement of the action and work-product material created after commencement of the action are exempt from the requirement of preparing a privilege log.

Therefore, by way of summary on the fiduciary exception issue, Aetna must produce, by October 20, 2017, responsive documents and electronically stored information for communications with its own in-house counsel before the lawsuit was filed and must, by the same deadline, submit under seal for *in camera* review all post-

lawsuit communications with its in-house counsel, up to the time the final decision to deny benefits was made.

**DONE and ORDERED,** in Chambers, in Miami, Florida, on October 16, 2017.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
All counsel of record